**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1452
_____

GARTOR KIKI BROWN,
Appellant

v.

UPPER DARBY POLICE DEPARTMENT; RAYMOND BLOHM; C. E. C.;
DELAWARE COUNTY; SGT. CARTER; LT. MOORE; FITZPATRICK;
DR. PHILLIPS, NURSE JEAN DOE; WARDEN BYRANS; CHIEF CHEITWOOD;
OFFICER JOHN DOE #1; OFFICER JOHN DOE #2; JEFFERY SOBEL; DETECTIVE
DUSTIN CLARK; DETECTIVE CHRISTOPHER KERR
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil No. 2-16-cv-02255)
District Judge:  Honorable Gerald A. McHugh
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 8, 2021
Before:  JORDAN, MATEY, and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed July 14, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Gartor Kiki Brown appeals pro se from the District Court's dismissal of several of his claims and the grant of summary judgment in favor of defendants on his remaining claims. For the reasons that follow, we will affirm the District Court's judgment.

I.

Brown was arrested in August 2015.[1] Detective Raymond Blohm of the Upper Darby Police Department subsequently obtained a search warrant on October 2, 2015, to collect Brown's DNA with a buccal swab. That day, Brown was brought to the Upper Darby Police Department and placed by himself in a temporary holding cell, handcuffed. First Blohm, then Brown's public defender, Jeffrey Sobel, then another detective, Louie Panagoplos, spoke with Brown about cooperating with the DNA collection. In a twelve-minute conversation, Sobel also advised Brown about the validity of the warrant.

When Brown refused to cooperate, Panagoplos, along with Detectives Dustin Clark and Christopher Karr, and Officer Stephen Tarozzi, physically restrained Brown for less than thirty seconds while Blohm tried to swab of the inside of Brown's cheek. Brown physically resisted the attempt by clenching his face and body; the swab broke. The officers released Brown while Blohm retrieved additional swabs, standing near him without touching him. When Blohm returned, the other officers held Brown by his shoulders, hair, and the side of his face for less than a minute while Blohm swabbed the inside of Brown's cheek. Blohm exited the cell, and two officers helped Brown get up.

---

[1] Because we write primarily for the parties, we recite only the facts necessary for our discussion; these facts are undisputed unless otherwise noted.

Brown was escorted out of the cell. On Blohm's request, the video of the incident was preserved.

In 2016, Brown filed a complaint in the District Court alleging that Blohm and Sobel subjected him to excessive force when they collected the buccal swab specimen. Brown amended his complaint in late March 2018, adding defendants and seeking to bring claims based on an additional unrelated incident that occurred on the same day as the buccal swab after he was returned to his jail, as well as another unrelated assault in February 2016. Several claims were dismissed by the District Court at that point.

Brown and the remaining defendants — Sobel, Blohm, Clark, Kerr, and additional officers Sergeant Fitzpatrick and Upper Darby Superintendent of Police Michael Chitwood[2] — proceeded to discovery. The parties filed cross-motions for summary judgment, which the District Court granted for defendants and denied for Brown.[3] Brown timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[4] We exercise

---

[2] We substitute the correct spelling for the name of the defendant identified as Michael Cheitwood in the District Court.

[3] The video from the holding cell where Brown's buccal swab sample was taken was provided to the District Court at summary judgment.

[4] Although the District Court did not specifically address Brown's claims against an unidentified "Jean Doe" defendant that Brown named in his amended complaint, that defendant was never served with process and thus was never a party to the case within the meaning of Federal Rule of Civil Procedure 54(b). See Gomez v. Gov't of Virgin Islands, 882 F.2d 733, 735-36 (3d Cir. 1989); United States v. Studivant, 529 F.2d 673, 674 n.2 (3d Cir. 1976). Accordingly, the District Court's orders are final and appealable,

3

plenary review over the District Court's orders dismissing and granting summary judgment on Brown's claims. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014); Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). Dismissal is appropriate "if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

We agree with the District Court's disposition of Brown's claims. Brown's claims pursuant to 42 U.S.C. § 1983 against defendant Sobel, Brown's public defender, were properly dismissed because Sobel was not acting under color of state law for purposes of § 1983 when he provided legal advice to Brown before officers collected Brown's buccal swab sample. See Polk County v. Dodson, 454 U.S. 312, 325 (1981).

The District Court properly dismissed or granted summary judgment for defendants on all of Brown's new federal claims in his operative 2018 amended complaint. His claims based on new allegations of an incident at his prison in October 2015 were filed outside of the relevant statute of limitations and did not relate back to his original 2016 complaint. Brown named several new defendants in his amended

---

and we have jurisdiction over this appeal. See Gomez, 882 F.2d at 735-36. We note that Brown raises no claim of error regarding the "Jean Doe" defendant.

complaint and alleged that a group of them had violated his civil rights in various ways after he was returned to his prison once the buccal swab sample was taken.

As the District Court properly concluded, these claims were filed outside of the statute of limitations for civil rights claims, which is two years in this case. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) ("The statute of limitations for a § 1983 claim arising in Pennsylvania is two years."); see also 42 Pa. Cons. Stat. § 5524(2). Brown's claims did not relate back to his original complaint pursuant to Federal Rule of Civil Procedure 15(c)(1) because his new allegations did not "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." See Fed. R. Civ. P. 15(c)(1)(B); see also Glover v. FDIC, 698 F.3d 139, 146 (3d Cir. 2012) ("[I]t is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.") (internal quotation marks and citation omitted). Brown's initial allegations were solely related to claims about the way that his DNA sample was taken at the police station, not to an incident allegedly occurring at his prison thereafter.

Brown also alleged for the first time in his amended complaint that he was assaulted by Blohm, Fitzpatrick, and Chitwood sometime in February 2016 because he refused to provide evidence against another suspect. These claims, too, are barred by the statute of limitations because he raised them for the first time in late March 2018, more than two years after the alleged assault occurred. See Kach, 589 F.3d at 634. The claims

5

do not relate back to his original complaint because he has not alleged a connection between the buccal swab incident and this later alleged assault.  See Fed. R. Civ. P. 15(c)(1)(B).  Brown's arguments on this point lack merit.[5]  Accordingly, the District Court properly granted summary judgment for Blohm, Fitzpatrick, and Chitwood on these claims.

Next, the District Court correctly granted summary judgment for Blohm, Clark, and Kerr on Brown's § 1983 excessive force claims stemming from the collection of the buccal swab sample.  "[U]sing a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search" that triggers the Fourth Amendment's protections against unreasonable searches and seizures.  Maryland v. King, 569 U.S. 435,

---

[5]  In his appellate brief, Brown argues for the first time that the statute of limitations for his allegations beyond the buccal swab incident should be tolled because: (1) his new allegations were similar enough and close enough in time to his allegations of assault stemming from the buccal swab collection; and (2) the District Court stayed his case for a period of time while his criminal charges were being adjudicated and that time period should not be counted towards his limitations period based on Pennsylvania law.  See Appellant's Br. at p. 8-10.  Even if this Court could consider Brown's arguments in the first instance, they are meritless.  Allegations of wholly separate assaults by different sets of parties than in Brown's buccal swab assault allegations did not put those parties on notice that he sought to bring claims against them.  See Glover, 698 F.3d at 146.  Further, the Pennsylvania statute cited by Brown to support his second argument provides that when "the *commencement* of a civil action or proceeding has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action or proceeding must be commenced."  See 42 Pa. Cons. Stat. § 5535(b) (emphasis added).  However, no such stay was in effect when Brown initiated this action, so this provision does not support his tolling argument.  Cf. Pearson v. Sec'y Pa. Dep't of Corr., 775 F.3d 598, 602 (3d Cir. 2015) (addressing statutory prohibition that stays commencement of an action).  Further, all of Brown's alleged assaults had already taken place by the time he filed his initial complaint and those factual allegations could have been included at the outset of this action.

446 (2013). In evaluating Brown's excessive force claims, we consider whether a constitutional violation occurred using the Fourth Amendment's objective reasonableness test. See Graham v. Connor, 490 U.S. 386, 395, 397 (1989). We evaluate objective reasonableness under the "totality of the circumstances" and "from the perspective of the officer at the time of the incident" without "the benefit of hindsight." Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015) (citation omitted).

In this case, based on the video of the entire incident in question, no reasonable juror could conclude that any officer used excessive force in restraining Brown to take a buccal swab, pursuant to a facially valid warrant, after he repeatedly refused to permit them to do so. See Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (explaining that although "[r]easonableness under the Fourth Amendment should frequently remain a question for the jury," summary judgment may be granted for a defendant "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that [an] officer's use of force was objectively reasonable under the circumstances") (internal quotation marks and citations omitted). At his deposition, Brown conceded the authenticity of the video and that no one punched, kicked, or struck him, as he had previously alleged. He argued that the force used to obtain the swab, as seen on the video, was nonetheless excessive.[6]

---

[6] To the extent that Brown testified for the first time at his deposition that he was beaten in a separate incident on the same day that his buccal swab was taken, the District Court properly concluded that his new allegations, contradicting his prior statements with no explanation, were not properly before the Court. Brown did not request leave to amend his complaint to add allegations about such an incident, and, to the extent that he was

7

Objectively considering the totality of the circumstances, we note that the officers repeatedly attempted to convince Brown to provide a sample willingly and permitted him to have a twelve-minute conversation with his public defender. The force used was only what was necessary to obtain a sample despite Brown's active resistance, and the officers did not touch Brown between their first and second attempts. The officers' actions were objectively reasonable under these circumstances.

Brown's related claim that he was unlawfully searched without a warrant lacks support. A facially valid warrant was introduced as part of the record at summary judgment, and Brown has not shown why the officers had any reason to question its reliability. Accordingly, summary judgment was properly granted on this claim as well.

For the remaining § 1983 claims against individual defendants that Brown mentioned in his amended complaint, including First Amendment retaliation, Eighth Amendment deliberate indifference, and Equal Protection claims, the record at summary judgment contained no evidence that Brown's constitutional rights were violated when his DNA was collected. Further, the District Court correctly granted summary judgment on all of Brown's § 1983 claims in which he sought to establish municipal liability on a failure to train theory, as the record did not provide support for any underlying constitutional violation. See Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006). Accordingly, the District Court properly granted summary judgment on Brown's remaining federal claims.

---

seeking to dispute what occurred when his buccal swab was obtained, his allegations are directly contradicted by the record.

There is no evidence to support Brown's state law claims against Sobel, who, according to video evidence, never touched or threatened Brown during his DNA collection. The remaining officers are immune from money damages under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") for actions taken within the scope of their duties. See Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006); see also Vargas v. City of Phila., 783 F.3d 962, 975 (3d Cir. 2015) (stating that the "PSTCA provides immunity to municipalities and its employees for official actions unless the employee's conduct goes beyond negligence and constitutes 'a crime, actual fraud, actual malice, or willful misconduct'") (quoting 42 Pa. Cons. Stat. § 8550). As already established, the record evidence does not support Brown's allegations that any officer took any action that would fall outside the scope of immunity provided for in the PSTCA. See Sanford, 456 F.3d at 315 (explaining that "willful misconduct is a demanding level of fault").

Finally, we discern no abuse of discretion in the District Court's denial of Brown's motion for appointment of counsel. See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993). We similarly see no error in the District Court's discovery-related rulings that Brown challenges on appeal. Brown claims that certain defendants' discovery responses were incomplete, but has not specifically contended how further discovery would have supported his claims. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010).

For these reasons, we will affirm the judgment of the District Court.

9